William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MICHELINE CANTAVE, MARCELLA CLOVIS,   :    21 Civ. 3111 (JMF)(SLC)
and ANN MARIE BROWN, Individually and   :
on behalf of those similarly Situated,          :
                                     :
                 Plaintiffs,   :    **SECOND AMENDED**
                                     :    **COMPLAINT AND**
    -against-                   :    **JURY DEMAND**
                                     :
ALL METRO HOME CARE SERVICES OF NEW   :
YORK, INC., ALL METRO HOME CARE SERVICES,   :
INC., ALL METRO FIELD SERVICE WORKERS   :
PAYROLL SERVICES CORPORATION, ALL METRO   :
PAYROLL SERVICES CORPORATION, ALL METRO   :
MANAGEMENT AND PAYROLL SERVICES   :
CORPORATION, ALL METRO AIDES INC.,   :
DAVID P. MIDDLETON, AND JOHN DOES #1-10,   :
                                     :
                 Defendants,   :
-----------------------------------------------------------------------X

      Plaintiffs MICHELINE CANTAVE, MARCELLA CLOVIS, and ANN MARIE

BROWN (collectively "Plaintiff" or "Plaintiffs"), by and through their attorney, complain and

allege for their second amended complaint ("complaint") (original complaint was filed on April

9, 2021) against ALL METRO HOME CARE SERVICES OF NEW YORK, INC., ALL

METRO HOME CARE SERVICES, INC., ALL METRO FIELD SERVICE WORKERS

PAYROLL SERVICES CORPORATION, ALL METRO PAYROLL SERVICES

CORPORATION, ALL METRO MANAGEMENT AND PAYROLL SERVICES

CORPORATION, ALL METRO AIDES INC., DAVID P. MIDDLETON, and JOHN DOES #1-

10 (together "Defendant" or "Defendants") as follows:

## NATURE OF THE ACTION

1.      Each Plaintiff  was a home health aide who worked for Defendants for more than 40 hours per week ("overtime hours") and, along with numerous other similar home health aides, was paid straight time for her overtime hours and was not paid time and one half for her overtime hours and was illegally not paid for many 24 hour shifts or illegally paid for only 13 hours of her 24 hour shifts and also was not paid spread of hours wages and minimum wages under the N.Y. Health Care Worker Wage Parity Act.

2.      The class action case entitled *Chered Ivory et al. v. All Metro et al.,* Index No. 160341/2017 (Sup. Ct. N.Y. Co. filed November 21, 2017) ("Prior Class Action") acts to toll the statute of limitations related to Plaintiffs' New York state law wage claims.

3.       Each Plaintiff alleges that she is: (i) entitled to unpaid wages from Defendants for overtime work for which she did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

4.      Each Plaintiff further complains that she is entitled to back wages from Defendant for (a) hours worked for which she did not receive wages including wages as required under the Wage Parity Act, (b) overtime work performed for which she received straight pay and did not receive time and one half the minimum wage or time and one half her actual wages, and (c) spread of hours work performed for which she did not receive an extra hour of pay, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations.

5.      Each Plaintiff is also entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to each Plaintiff.

6.      Plaintiffs bring their federal claims as collective action claims and bring their New York State claims on an individual basis because a Prior Class Action was filed in New York Supreme Court, except Plaintiffs bring their claims for violation of the New York Wage Theft Prevention Act on a class basis as these claims were not made in the Prior Class Action.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

10.      Plaintiff MICHELINE CANTAVE is an adult individual, residing in the State of Florida.

11.      Plaintiff MARCELLA CLOVIS was, at all relevant times, an adult individual, residing in Westchester County in New York State.

12.      Plaintiff ANN MARIE BROWN was, at all relevant times, an adult individual, residing in Queens County in New York State.

13.    Upon information and belief, Defendants ALL METRO HEALTH CARE SERVICES OF NEW YORK, INC., ALL METRO HOME CARE SERVICES, INC., ALL METRO FIELD SERVICE WORKERS PAYROLL SERVICES CORPORATION, ALL METRO AIDES INC. (individually and together the "Corporate Defendant") each is a New York corporation, with its principal place of business at 70 East Sunrise Highway, Suite 520, Valley Stream, N.Y. 11581.

14.    Upon information and belief, Defendant DAVID P. MIDDLETON is an officer, director and/or managing agent of the Corporate Defendant, whose address is unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and is jointly and severally liable with the Corporate Defendant.

15.    Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

16.    Upon information and belief, DAVID P. MIDDLETON is the President and Chief Executive Officer of each Corporate Defendant and has held these positions during the last 6 years ("Middleton time period").

17.     Upon information and belief, during the Middleton time period, DAVID P. MIDDLETON had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendants' home health aide employees and other employees and his decisions directly affected the nature and condition of the home health care employees' employment.

18.     Upon information and belief, during the Middleton time period, DAVID P. MIDDLETON  (1) had the power to hire and fire the home health aide employees of the Corporate Defendant, (2) supervised and controlled the home health aide employees' schedules and conditions of employment, (3) determined the rate and method of payment of the home health aide employees, and (4) maintained employment records related to the home health aide employees.

### COLLECTIVE ACTION ALLEGATIONS

19.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since April 9, 2015 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

20.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon

information and belief, there are at least 40 members of the Class during the Collective Action

Period, most of whom would not be likely to file individual suits because they lack adequate

financial resources, access to attorneys or knowledge of their claims.

21.     Plaintiffs will fairly and adequately protect the interests of the Collective Action

Members and have retained counsel that is experienced and competent in the fields of

employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in

conflict with those members of this collective action.

22.     A collective action is superior to other available methods for the fair and efficient

adjudication of this controversy, since joinder of all members is impracticable. Furthermore,

inasmuch as the damages suffered by individual Collective Action Members may be relatively

small, the expense and burden of individual litigation make it virtually impossible for the

members of the collective action to individually seek redress for the wrongs done to them.  There

will be no difficulty in the management of this action as a collective action.

23.     Questions of law and fact common to the members of the collective action

predominate over questions that may affect only individual members because Defendant has

acted on grounds generally applicable to all members.

24.     Among the common questions of law and fact common to Plaintiffs and other

Collective Action Members are:

    a.     whether the Defendant employed the Collective Action members within the
        meaning of the FLSA;

    b.     whether the Defendant failed to keep true and accurate time records for all hours
        worked by Plaintiff and the Collective Action Members;

    c.     what proof of hours worked is sufficient where the employer fails in its duty to
        maintain time records;

d.      whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

e.      whether Defendant failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.      whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

g.      whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.      whether Defendant should be enjoined from such violations of the FLSA in the future.

25.      Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

26.      Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

27.      Plaintiffs brings their New York State Law claims on behalf of all persons who were employed by Defendant at any time since April 9, 2015, to the entry of judgment in this case (the "Class Period"), who were not provided the notices required by the Wage Theft Prevention Act (the "Class" or "Class Members") and are owed statutory damages.

28.      The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the

Defendant, upon information and belief, there at least 40 members of Class during the Class Period.

29.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy— particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

30.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

31.     Plaintiffs are committed to pursuing their action and have retained competent counsel experienced in employment law and class action litigation.

32.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

33.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

  a.     whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

  b.     whether Defendant provided proper notices to the Members of the Class as required by the New York Wage Theft Protection Act.

  e.     whether the Defendant is liable for the statutory damages set forth in the Wage Theft Prevention Act.

## STATEMENT OF FACTS

34.     Plaintiff MICHELINE CANTAVE was a home health aide/maid employed by Attentive from about February 12, 2017 until about February 4, 2019.

35.     Plaintiff MARCELLA CLOVIS was a home health aide/maid employed by Attentive from about September 1, 2017 until on or about February 15, 2020.

36.     Plaintiff ANN MARIE BROWN was a home health aide/maid employed by Attentive from about August 1, 2019 until on or about January 1, 2021.

37.     Defendants are each a licensed home health care agency that sent Plaintiffs to work as a home health aide/maid for numerous customers located in New York City.

38.     During the time period, Plaintiffs maintained their own residence, and did not "live in" the homes of Defendants' clients or in the home of their employer, as their primary residence.

39.     While employed by Defendants, Plaintiffs generally worked more than 40 hours per week and were not paid time and one half for their hours worked over 40 in a work week.

40.     Plaintiffs often worked 24-hour shifts for Defendants during their employment.

41.     Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

42.     Even when Defendants had knowledge that a health aide was unable to get any sleep during the night or take any meal breaks, Defendants still illegally deducted 8 hours of sleep time and three hours of meal break time from the health aide's hours worked.

43.     Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

44.     Defendants had no policy to identify which Plaintiffs were not provided a bed to sleep on during 24-hour live in shifts.

45.     Even when Defendants knew a Plaintiff was not given a bed to sleep on during 24-hour live in shifts, Defendants did not pay the Plaintiff for 8 hours of the Plaintiff's 24 hour shift.

46.     When Plaintiffs worked 24-hour shifts, each Plaintiff was required to stay overnight at the residences of Defendants' clients, and needed to be ready and available to provide assistance to Defendants' clients as needed.

47.     When Plaintiffs worked 24-hour shifts, they were not permitted to leave the client unattended.

48.     Plaintiffs were only paid for approximately 13 hours of their 24-hours shifts.

49.     Plaintiffs were not paid any hourly rate for the other 11 hours worked.

50.     Plaintiffs were generally not permitted to leave the client's residence during their shifts.

51.     Plaintiffs generally did not get 8 hours of sleep and 5 hours of sleep without any interruption during their 24-hour live in shifts.

52.     Plaintiffs did not get a one-hour break for each of three meals per day.

53.     Plaintiffs were often forced to combine their meal times with the meal times of the Defendants' clients because they needed feeding assistance or constant supervision.

54. Plaintiffs did not always receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which they worked a spread of more than ten hours.

55. Plaintiffs spent at least 30% of her time directly performing household work.

56. Plaintiffs also did not receive minimum wages, including minimum wages under the Wage Parity Act, for all their hours worked and were not paid time and one half the minimum wage rate for their overtime hours and were not paid full time and one half their regular rate for their overtime hours.

57. Plaintiffs was not given or offered health insurance by Defendant.

58. Medicaid paid Defendants for some or all of Plaintiffs' services.

59. At all relevant times, Defendants have maintained a practice and policy of paying similar health aides for only 13 hours of their 24-hour shifts in violation of New York Labor Law.

60. Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

61. Plaintiffs complained to their coordinators that they were unable to get any sleep during the night or any meal breaks, but Defendants still deducted 8 hours of sleep time and three hours of meal breaks from their hours worked.

62.     Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

63.     At all relevant times, Defendants have maintained a practice and policy of assigning Plaintiffs to work more than 40 hours per week without paying them one and one half times the basic minimum hourly rate for all hours worked in excess of forty per week, in violation of New York State Labor Law and the Wage Parity Act.

64.     Defendants' actions as described herein were intentional and not made in good faith.

65.     Plaintiffs  were not able to get 5 hours of uninterrupted sleep or 8 hours of sleep during 24-hour live in shifts because they generally had to get up at least every four hours to provide services to the client, which included among other services, taking the client to the bathroom, getting the client a glass of water or a snack, calming the client when the client became stressed, cleaning the client's bed when the client urinated or defecated in the bed and/or changing the client's pajamas.

66.     At times, Plaintiffs had to turn the client every two hours at the client's request or as directed by the Plan of Care.

67.     During the time period, Plaintiffs were not paid full regular wages for all their hours worked and were not paid overtime wages for all of their hours worked over forty in a workweek ("overtime"), and were not paid an extra hour of pay for their hours worked over a spread of 10 hours per day.

68.     During the time period, Plaintiffs often worked for 24 hours staying overnight at the client's house, and on these days were only paid for 13 hours, despite the fact that their sleep was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented them from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep and despite the fact that they were not given any time off for meal breaks.

69.     Plaintiffs generally clocked in and out using the client's land line phone.

70.     When Plaintiffs clocked out, Plaintiffs generally entered codes showing the types of work that they had performed.

71.     At times Plaintiffs filed handwritten time sheets.

72.     There were no codes to report not getting sleep or breaks during 24-hour shifts.

73.     During the time period, Plaintiffs did not receive a meal break because they were on call or working during their breaks and regularly interrupted by the client while eating.

74.     During the time period, Plaintiffs were not paid for all their hours worked and were not paid for their hours worked over 40 hours a week ("overtime hours") at time and one half their regular wages and at times were not paid for all their hours worked at the minimum wage rate.

75.     During the time period, Plaintiffs were not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principal place of business and telephone number and their specific rate of pay as required by the New York Wage Theft Prevention Act.

76.     Plaintiffs have not been given any specific notice of this information to sign and have not signed any such notice.

77.     Plaintiffs also were not given any paystubs showing their correct hours worked and pay rate.

78.     Upon information and belief, Defendants did not post in a conspicuous place a notice that Plaintiffs were entitled to minimum wages or overtime and accordingly the statute of limitations should be tolled.

## CLAIM I
## FAIR LABOR STANDARDS ACT

79.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

81.     At all relevant times, Defendants employed, and/or continue to employ, each Plaintiff within the meaning of the FLSA.

82.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

83.     Each Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiffs' written consents are attached hereto and incorporated by reference.

84.     At all relevant times, the Defendants had a policy and practice of refusing to pay its Plaintiffs minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

85.     As a result of the Defendants' willful failure to compensate Plaintiffs' overtime wages and/or minimum wages for all of their hours worked the Defendants have violated and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

86.     As a result of the Defendants' failure to record, report, credit and/or compensate Plaintiffs, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

87.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88.     Due to the Defendants' FLSA violations, Plaintiffs and the Collective Action members are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW
**(unpaid regular wages, overtime wages, spread of hours wages, minimum wages and Wage Parity Act minimum wages)**

89.     Plaintiffs repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     At all relevant times, Plaintiffs were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

91.     Defendants willfully violated Plaintiffs' rights by failing to pay them wages in violation of the New York Labor Law and its regulations.

92.     The Defendants' New York Labor Law violations have caused Plaintiffs, irreparable harm for which there is no adequate remedy at law.

93.     Due to the Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, unpaid minimum wages, unpaid overtime wages, unpaid spread of hours wages, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to New York Labor Law §663(1) et seq.

**CLAIM III**
(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract
With New York State)

94.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

95.     Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiffs wages as required by NY Health Care Worker Wage Parity Act.

96.     The agreement to pay Plaintiffs wages as required by the NY Health Care Worker Wage Parity Act was made for the benefit of the Plaintiff.

97.     Defendants breached their obligation to pay Plaintiffs all wages they were due as required by the NY Health Care Worker Wage Parity Act and as result Plaintiffs were injured.

98.     Plaintiffs, as third party beneficiaries of Defendants' contract with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, and as

persons protected by the NY Health Care Worker Wage Parity Act are entitled to relief for the breach of this contractual obligation and the violation of this Act, plus interest.

## **CLAIM IV**

(Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Wages for Minimum Wages under the NY Health Care Worker Wage Parity Act, and Spread of Hours)

99.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

100.     Under the common law doctrine of "unjust enrichment" insofar as Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiffs: (1) all wages due for work performed; (2) an extra hour at the minimum wage  for working a "spread  of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act.

101.     Defendant accepted and received the benefits of the work performed by Plaintiffs at the expense of Plaintiffs.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiffs' labor, without paying all wages due, which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act, for hours caring for the clients of Defendants.

102.     Plaintiffs are entitled to  relief  for  this  unjust  enrichment in an amount equal to the benefits unjustly retained by Defendant, plus interest on these amounts.

**CLAIM V**
(Violation of Wage Parity Act Minimum Wage Requirement)

103.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

104.     Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiffs wages as required by NY Health Care Worker Wage Parity Act.

105.     Under the NY Health Care Worker Wage Parity Act Defendants were required to pay Plaintiffs minimum wages under the NY Health Care Worker Wage Parity Act.

106.     Defendants breached their obligations to pay minimum wages as required by the NY Health Care Worker Wage Parity Act, and as result Plaintiffs were injured.

107.     Plaintiffs are entitled to recover their unpaid minimum wages, plus interest, as relief for the violation of the NY Health Care Worker Wage Parity Act.

**CLAIM VI**
(Breach of Contract-Wages)

108.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

109.     Plaintiffs entered into contracts with the Defendant under which Plaintiffs were to provide home health aide and maid services and Defendants were required to pay (a) wages as required by law, (b) wages equal to time and one half the regular wage rate for hours worked over forty in a week and during holidays and also (c) a one week paid vacation annually.

110.     Plaintiffs fulfilled their obligations under the contracts, but Defendant failed to pay the wages as required by the contracts.

111.   As a result of Defendants' breach, Plaintiffs are entitled to recover damages, plus interest.

## CLAIM VII
### (Living Wage Act claim)

112.   Plaintiffs reallege and incorporate by reference all the allegations set forth above.

113.   NYC Admin. Code § 6-109 provides that an employer whose employees perform work pursuant to city service contracts or subcontracts (the "City Service Contract(s)") must pay "no less than the living wage and must provide its employees health benefits (supplemental benefits) or must supplement their hourly wage rate by an amount no less than the health benefits supplement rate."

114.   NYC Admin. Code § 6-109 further provides that "[the abovementioned] requirement applies for each hour that the employee works performing the city service contract or subcontract."

115.   The "living wage" and "health benefits" or "health benefits supplement" are the wages and supplements set forth under Homecare Services in § 6-109 of the NYC Admin. Code.

116.   Upon information and belief, the schedule of living wages and supplements to be paid to all workers furnishing labor pursuant to the City Service Contract(s) was annexed to and formed a part of the City Service Contract(s), in accordance with NYC Admin. Code § 6-109.

117.   Plaintiffs furnished labor to Defendant in furtherance of its performance of the City Service Contract(s).

118.   Upon information and belief, Defendant willfully paid Plaintiffs less than the rates of wages and benefits to which Plaintiffs were entitled.

119.   Defendant's actions as described herein were intentional and not made in good

faith.

120.    Upon information and belief, the City Service Contract(s) entered into by Defendant contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

121.    Those living wages and health benefits or health benefit supplements were made a part of the City Service Contract(s) for the benefit of Plaintiffs.

122.    Defendant breached the City Service Contract(s) by willfully failing to pay Plaintiffs the living wages and health benefits or health benefit supplements for all labor performed.

123.    Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part 13 of the City Service Contract(s).

124.    Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein.  Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein."

125.    By reason of its breach of the City Service Contract(s), Defendant is liable to Plaintiffs for an amount to be determined at trial, plus interest.

## CLAIM VIII
(Wage Theft Prevention Act Notice & Wage Statement Violations – NYLL §195)

126.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

127.    Defendants willfully violated Plaintiffs' rights and the rights of the Class

Members by failing to provide proper notices and wage statements in violation of the New York

Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

128.    Defendant has willfully failed to supply Plaintiffs and members of the Class with

the notice required by NYLL § 195(1), in English or the language identified by Plaintiffs or the

Class Member as his/her  primary language.

129.    Defendant has failed to provide Plaintiffs and Members of the Class with a notice

containing their  "rate or rates of pay and the basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates

of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip,

meal, or lodging allowances; the regular pay day designated by the employer in accordance with

[NYLL §191]; the name of the employer; any 'doing business as' names used by the employer;

the physical address of the employer's main office or principal place of business, and a mailing

address if different; the telephone number of the employer; plus such other information as the

commissioner deems material and necessary."

130.    Defendant has willfully failed to supply Plaintiffs and Member of the Class

with  an accurate statement of wages as required by NYLL § 195(3), containing the "dates of

work covered by that payment of wages; name of employee; name of employer; address and

phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift,

day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and

overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours

worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and

net wages."

131.    Due to Defendant's violations of the NYLL§ 195(1), each Plaintiff and Class Member is entitled to $50 dollars for each workday in which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-b, as well as reasonable attorneys' fees, costs, injunctive and declaratory relief.

132.    Due to Defendant's violations of the NYLL § 195(3), each Plaintiff and Class Member is entitled to recover from Defendant $250 for each workday on or after April 9, 2011, on which the violations occurred or continue to occur, or a total of $5,000, as provided for by NYLL § 198(1)-d.

133.    Although there is a prior filed class action in New York Supreme Court, it did not bring any class claim for violation of the Wage Theft Protection Act because New York procedural law under CPLR Section 901(b) (unlike federal Rule 23 applicable in this action) does not permit claims seeking minimum measure of statutory damages such as the Wage Theft Prevention Act to be certified as a class.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

  a.  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and

appointing Plaintiff and her counsel to represent the Collective Action Members;

b.   Certification of Claim VIII of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (2) and/or (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

c.   Judgment in an amount to be determined at trial, plus interest;

d.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

e.   An order tolling the statute of limitations;

f.   An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

g.   An award of unpaid wages, spread of hours wages, overtime wages and minimum wages due under the FLSA, the New York Labor Law, the New York common law, and/or the NY Health Care Worker Wage Parity Act;

h.   An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law and the NY Health Care Worker Wage Parity Act;

i.   An award of statutory damages under the New York Wage Theft Prevention Act (NYLL Section 195);

j.   An award of prejudgment and post judgment interest;

k.  An award of costs and expenses of this action together with reasonable attorney's and expert fees;

l.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the amended complaint.


Dated:  New York, New York
        July 10, 2021


                          LAW OFFICE OF WILLIAM COUDERT RAND


                          _____
                          William Coudert Rand, Esq.
                          *Attorney for Plaintiffs*, Individually and on
                          Behalf of similar health aides
                          501 Fifth Avenue 15th Floor
                          New York, New York 10017
                          Tel: (212) 286-1425
                          Fax: (646) 688-3078
                          Email: wcrand@wcrand.com

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **All Metro Health Care Services of New York, Inc., All Metro Home Care Services, Inc., All Metro Field Service Workers Payroll Services Corporation, and David P. Middleton, Et Al.** to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

Signature

Date     Print Name     Ann - Marie Brown

8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **All Metro Health Care Services of New York, Inc., All Metro Home Care Services, Inc., All Metro Field Service Workers Payroll Services Corporation, and David P. Middleton, Et Al.** to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

Marcella Clois(over)       4/8/21       Marcella Clovis
_____    _____    _____
Signature                   Date       Print Name

8

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **All Metro Health Care Services of New York, Inc., All Metro Home Care Services, Inc., All Metro Field Service Workers Payroll Services Corporation, and David P. Middleton, Et Al.** to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Micheline Contave (over) 4/8/21_    _Micheline Contave_

Signature                Date    Print Name

8